**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| SUMMIT DATA SYSTEMS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 10-CV-749-GMS |
| EMC CORPORATION, BUFFALO | ) | |
| TECHNOLOGY (USA), INC., D-LINK SYSTEMS, | ) | |
| INC., HITACHI DATA SYSTEMS | ) | |
| CORPORATION, INFORTREND | ) | |
| CORPORATION, NETAPP, INC., NETGEAR, | ) | JURY TRIAL DEMANDED |
| INC., and QNAP SYSTEMS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT

Plaintiff Summit Data Systems, LLC ("SDS") files this its First Amended Complaint against Defendants showing this Court as follows.

## Nature of the Action

1.      This is an action for patent infringement, arising out of Defendants' infringement of U.S. Pat. No. 7,392,291, issued on June 24, 2008, and entitled "Architecture for Providing Block-Level Access over a Computer Network" (the "291 Patent") and U.S. Pat. No. 7,428,581, issued on September 23, 2008, and also entitled "Architecture for Providing Block-Level Access over a Computer Network" (the "'581 Patent").  True and correct copies of the '291 Patent and '581 Patent are attached hereto as Exhibits A and B, respectively.

## The Parties

2.      Plaintiff is a limited liability company, organized and existing under the laws of the state of Texas, with its principal place of business also in the state of Texas.

3.     Upon information and belief, Defendant EMC Corporation ("EMC") is a corporation organized and existing under the laws of the state of Delaware.  EMC's registered agent for service of process is Corporation Service Company, 2711 Centerville Road, Suite 400, Newcastle, Delaware 19808.  Upon information and belief, EMC does business in the state of Delaware by, among other things, offering for sale and selling the EMC Products, as defined below, within the state of Delaware.

4.     Upon information and belief, Defendant Buffalo Technology (USA), Inc. ("Buffalo") is a corporation organized and existing under the laws of the state of Delaware. Buffalo's registered agent for service of process is The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.  Upon information and belief, Buffalo does business in the state of Delaware by, among other things, offering for sale and selling the Buffalo Products, as defined below, within the state of Delaware.

5.     Upon information and belief, Defendant D-Link Systems, Incorporated ("D-Link") is a corporation organized and existing under the laws of the state of California.  Upon information and belief, D-Link's registered agent for service of process is Ms. Nancy Lemm, 17595 Mt. Hermann Street, Fountain Valley, California 92708.  Upon information and belief, D-Link has offered for sale and/or sold the D-Link Products, as defined below, within the state of Delaware.

6.     Upon information and belief, Defendant Hitachi Data Systems Corporation ("Hitachi") is a corporation organized and existing under the laws of the state of Delaware. Hitachi's registered agent for service of process is The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.  Upon information and belief,

Hitachi does business in the state of Delaware by, among other things, offering for sale and selling the Hitachi Products, as defined below, within the state of Delaware.

7.      Upon information and belief, Defendant Infortend Corporation ("Infortrend") is a corporation organized and existing under the laws of the state of California.  Upon information and belief, Infortrend's registered agent for service of process is Mr. Tony Chu, 2200 Zanker Road, #130, San Jose, California 95131.  Upon information and belief, Infortrend has offered for sale and/or sold the Infortrend Products (as defined below) within the state of Delaware.

8.      Upon information and belief, Defendant Netapp, Inc.("Netapp") is a corporation organized and existing under the laws of the state of Delaware.  Netapp's registered agent for service of process is The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801. Upon information and belief, Netapp does business in the state of Delaware by, among other things, offering for sale and selling the Netapp Products, as defined below, within the state of Delaware.

9.      Upon information and belief, Defendant Netgear, Inc. ("Netgear") is a corporation organized and existing under the laws of the state of Delaware. Defendant Netgear's registered agent for service of process is Incorporating Services, Ltd., 3500 South DuPont Highway, Dover, Delaware 19901. Upon information and belief, Netgear does business in the state of Delaware by, among other things, offering for sale and selling the Netgear Products, as defined below, within the state of Delaware.

10.     Upon information and belief, Defendant Qnap Systems, Inc. ("Qnap") is a corporation organized and existing under the laws of the state of California.  Upon information and belief, Qnap's registered agent for service of process is Chia-Lin Chen, 166 University

Parkway, Pomona, California 91768.  Upon information and belief, Qnap has offered for sale and/or sold the Qnap Products (as defined below) within the state of Delaware.

## Jurisdiction and Venue

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and/or 1338.

12.     This Court has personal jurisdiction over Defendants D-Link, Infortrend, and Qnap by virtue of these companies' offering for sale and selling their respective "Products," defined below, within the state of Delaware and, upon information and belief, by these companies' deriving significant revenue from such sales.  Personal jurisdiction exists over the remaining Defendants by virtue of their being incorporated in Delaware and their doing business in the state of Delaware.

13.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and/or 1400.

## Operative Facts

### The Patents-In-Suit

14.     SDS is the owner by assignment of all right, title, and interest in the '291 Patent.

15.     The '291 Patent describes a novel computer storage architecture that allows block level access and multiple concurrent logical connections.

16.     Claim 1 of the '291 Patent provides:

1.     A block-level shared network storage system, comprising:

   a storage server comprising an array of disk drives, and comprising a processor that runs a device driver to provide block-level access to data stored on the array of disk drives, wherein the storage server is configurable to provide multiple storage partitions, each of which may be allocated to a different host computer;

   and a host computer coupled to the storage server by at least one computer network;

   wherein the host computer and the storage server perform input/output (I/O) operations over the at least one network using multiple, concurrent logical connections, each

logical connection being between the host computer and the storage server over the at least one computer network, such that a first I/O operation is executed over a first logical connection while a second I/O operation is executed over a second logical connection.

'291 Patent, Col. 21, l. 62-Col. 22, l. 27.

17.     SDS is the owner by assignment of all right, title, and interest in the '581 Patent.

18.     The '581 Patent also describes a novel computer storage architecture that allows block level access and multiple concurrent TCP/IP logical connections.

19.     Claim 1 of the '581 Patent provides:

1.     A block-level shared network storage system, comprising:

a disk array controller configured to control a plurality of disk drives, said disk array controller configured to operate the plurality of disk drives as a disk array;

at least one network interface for connecting the storage server to at least one network; and

a processor coupled to the disk array controller and to the at least one network interface, said processor programmed to communicate over said at least one network with one or more host computers via multiple concurrent logical connections and to perform input/output operations in parallel over the multiple concurrent logical connections, each input/output operation including a transfer of data between a host computer and the disk array via said disk array controller and said at least one network interface;

wherein the logical connections are TCP/IP connections, and the storage server is configurable to provide multiple storage partitions, each of which may be allocated to a different host computer.

'581 Patent, Col. 21, l. 60-Col. 22, l. 12.

## The Infringing Products

### Defendant EMC's Products

20.     Defendant EMC, within the United States, manufactures, uses, offers for sale, or sells network storage devices and other products, including, but not limited to, the CLARiiON AX100 (collectively, the "EMC Products"). The EMC Products, among other things, are storage

servers comprised of an array of disks and a processor that allows block level access and multiple concurrent TCP/IP logical connections between a host computer and the disk array, with the storage server being configurable to provide multiple storage partitions, each of which may be allocated to a different host computer.

21.     The EMC Products practice each limitation of the method set forth in at least claim 1 of the '291 Patent.

22.     The EMC Products practice each limitation of the method set forth in at least claim 1 of the '581 Patent.

23.     Defendant EMC does not have a license or other authorization to practice the claims set forth in either the '291 Patent or '581 Patent.

### Defendant Buffalo's Products

24.     Defendant Buffalo, within the United States, manufactures, uses, offers for sale, or sells network storage devices and other products, including, but not limited to, the Terastation Pro (collectively, the "Buffalo Products").   The Buffalo Products, among other things, are storage servers comprised of an array of disks and a processor that allows block level access and multiple concurrent TCP/IP logical connections between a host computer and the disk array, with the storage server being configurable to provide multiple storage partitions, each of which may be allocated to a different host computer.

25.     The Buffalo Products practice each limitation set forth in at least claim 1 of the '291 Patent.

26.     The Buffalo Products practice each limitation set forth in at least claim 1 of the '581 Patent.

27.     Defendant Buffalo does not have a license or other authorization to practice the claims set forth in either the '291 Patent or the '581 Patent.

### Defendant D-Link's Products

28.     Defendant D-Link, within the United States, manufactures, uses, offers for sale, or sells network storage devices and other products, including, but not limited to, the xStack Storage DSN-1100-10 ISCSI SAN Array, (collectively, the "D-Link Products").  The D-Link Products, among other things, are storage servers comprised of an array of disks and a processor that allows block level access and multiple concurrent TCP/IP logical connections between a host computer and the disk array, with the storage server being configurable to provide multiple storage partitions, each of which may be allocated to a different host computer.

29.     The D-Link Products practice each limitation set forth in at least claim 1 of the '291 Patent.

30.     The D-Link Products practice each limitation set forth in at least claim 1 of the '581 Patent.

31.     Defendant D-Link does not have a license or other authorization to practice the claims set forth in either the '291 Patent or the '581 Patent.

### Defendant Hitachi's Products

32.     Defendant Hitachi, within the United States, manufactures, uses, offers for sale, or sells modular storage controllers and other products, including, but not limited to, the Simple Modular Storage 100 (collectively, the "Hitachi Products").  The Hitachi Products, among other things, ascertain whether the controller is connected to a ATA or SCSI drive and utilize the appropriate protocol to communicate with the disk based upon this determination.

33.    The Hitachi Products practice each limitation of the method set forth in at least claim 1 of the '291 Patent.

34.    The Hitachi Products practice each limitation of the method set forth in at least claim 1 of the '581 Patent.

35.    Defendant Hitachi does not have a license or other authorization to practice the claims set forth in either the '291 Patent or the '581 Patent.

**Defendant Infortrend's Products**

36.    Defendant Infortrend, within the United States, manufactures, uses, offers for sale, or sells network storage devices and other products, including, but not limited to, the EonStor DS-ISCSI Series, (collectively, the "Infortrend Products").  The Infortrend Products, among other things, are storage servers comprised of an array of disks and a processor that allows block level access and multiple concurrent TCP/IP logical connections between a host computer and the disk array, with the storage server being configurable to provide multiple storage partitions, each of which may be allocated to a different host computer.

37.    The Infortrend Products practice each limitation set forth in at least claim 1 of the '291 Patent.

38.    The Infortrend Products practice each limitation set forth in at least claim 1 of the '581 Patent.

39.    Defendant Infortrend does not have a license or other authorization to practice the claims set forth in either the '291 Patent or '581 Patent.

**Defendant Netapp's Products**

40.    Defendant Netapp, within the United States, manufactures, uses, offers for sale, or sells network storage devices and other products, including, but not limited to, the Netapp

FAS250 (collectively, the "Netapp Products"). The Netapp Products, among other things, are storage servers comprised of an array of disks and a processor that allows block level access and multiple concurrent TCP/IP logical connections between a host computer and the disk array, with the storage server being configurable to provide multiple storage partitions, each of which may be allocated to a different host computer.

41.     The Netapp Products practice each limitation of the method set forth in at least claim 1 of the '291 Patent.

42.     The Netapp Products practice each limitation of the method set forth in at least claim 1 of the '581 Patent.

43.     Defendant Netapp does not have a license or other authorization to practice the claims set forth in either the '291 Patent or '581 Patent.

**Defendant Netgear's Products**

44.     Defendant Netgear, within the United States, manufactures, uses, offers for sale, or sells network storage devices and other products, including, but not limited to, the ReadyNAS NVX, (collectively, the "Netgear Products"). The Netgear Products, among other things, are storage servers comprised of an array of disks and a processor that allows block level access and multiple concurrent TCP/IP logical connections between a host computer and the disk array, with the storage server being configurable to provide multiple storage partitions, each of which may be allocated to a different host computer.

45.     The Netgear Products practice each limitation set forth in at least claim 1 of the '291 Patent.

46.     The Netgear Products practice each limitation set forth in at least claim 1 of the '581 Patent.

47.     Defendant Netgear does not have a license or other authorization to practice the claims set forth in either the '291 Patent or '581 Patent.

### Defendant Qnap's Products

48.     Defendant Qnap, within the United States, manufactures, uses, offers for sale, or sells network storage devices and other products, including, but not limited to, the TURBO NAS, (collectively, the "Qnap Products").  The Qnap Products, among other things, are storage servers comprised of an array of disks and a processor that allows block level access and multiple concurrent TCP/IP logical connections between a host computer and the disk array, with the storage server being configurable to provide multiple storage partitions, each of which may be allocated to a different host computer.

49.     The Qnap Products practice each limitation set forth in at least claim 1 of the '291 Patent.

50.     The Qnap Products practice each limitation set forth in at least claim 1 of the '581 Patent.

51.     Defendant Qnap does not have a license or other authorization to practice the claims set forth in either the '291 Patent or '581 Patent.

52.     All conditions precedent to the assertion of the claims set forth in this Complaint have been satisfied or waived.

### Count One
### EMC's Infringement of the '291 Patent

53.     SDS incorporates by reference as if fully set forth herein the averments contained within Paragraphs 1-3, 11-16, 20-21, 23, and 52.

54.     By reason of some or all of the foregoing, Defendant EMC has infringed at least Claim 1 of the '291 Patent.  Defendant EMC's infringement has been willful since at least the date of the filing of the original Complaint instituting this action.

55.     SDS has suffered damages as the direct and proximate result of Defendant EMC's infringement of the '291 Patent.

### Count Two
### EMC's Infringement of the '581 Patent

56.     SDS incorporates by reference as if fully set forth herein the averments contained within Paragraphs 1-3, 11-13, 17-20, 22-23, and 52.

57.     By reason of some or all of the foregoing, Defendant EMC has infringed at least Claim 1 of the '581 Patent.  Defendant EMC's infringement has been willful since at least the date of the filing of the original Complaint instituting this action.

58.     SDS has suffered damages as the direct and proximate result of Defendant EMC's infringement of the '581 Patent.

### Count Three
### Buffalo's Infringement of the '291 Patent

59.     SDS incorporates by reference as if fully set forth herein the averments contained within Paragraphs 1-2, 4, 11-16, 24-25, 27, and 52.

60.     By reason of some or all of the foregoing, Defendant Buffalo has infringed at least Claim 1 of the '291 Patent.  Defendant Buffalo's infringement has been willful since at least the date of the filing of the original Complaint instituting this action.

61.     SDS has suffered damages as the direct and proximate result of Defendant Buffalo's infringement of the '291 Patent.

**Count Four**
**Buffalo's Infringement of the ' 581 Patent**

62.     SDS incorporates by reference as if fully set forth herein the averments contained within Paragraphs 1-2, 4, 11-13, 17-19, 24, 26-27, and 52.

63.     By reason of some or all of the foregoing, Defendant Buffalo has infringed at least Claim 1 of the '581 Patent.  Defendant Buffalo's infringement has been willful since at least the date of the filing of the original Complaint instituting this action.

64.     SDS has suffered damages as the direct and proximate result of Defendant Buffalo's infringement of the '581 Patent.

**Count Five**
**D-Link's Infringement of the '291Patent**

65.     SDS incorporates by reference as if fully set forth herein the averments contained within Paragraphs 1-2, 5, 11-16, 28-29, 31, and 52.

66.     By reason of some or all of the foregoing, Defendant D-Link has infringed at least Claim 1 of the '291 Patent.  Defendant D-Link's infringement has been willful since at least the date of the filing of the original Complaint instituting this action.

67.     SDS has suffered damages as the direct and proximate result of Defendant D-Link's infringement of the '291 Patent.

**Count Six**
**D-Link's Infringement of the ' 581Patent**

68.     SDS incorporates by reference as if fully set forth herein the averments contained within Paragraphs 1-2, 5, 11-13, 17-19, 28, 30-31, and 52.

69.     By reason of some or all of the foregoing, Defendant D-Link has infringed at least Claim 1 of the '581 Patent. Defendant D-Link's infringement has been willful since at least the date of the filing of the original Complaint instituting this action.

70.     SDS has suffered damages as the direct and proximate result of Defendant D-Link's infringement of the '581 Patent.

## Count Seven
### Hitachi's Infringement of the '291 Patent

71.     SDS incorporates by reference as if fully set forth herein the averments contained within Paragraphs 1-2, 6, 11-16, 32-33, 35, and 52.

72.     By reason of some or all of the foregoing, Defendant Hitachi has infringed at least Claim 1 of the '291 Patent.  Defendant Hitachi's infringement has been willful since at least the date of the filing of the original Complaint instituting this action.

73.     SDS has suffered damages as the direct and proximate result of Defendant Hitachi's infringement of the '291 Patent.

## Count Eight
### Hitachi's Infringement of the '581 Patent

74.     SDS incorporates by reference as if fully set forth herein the averments contained within Paragraphs 1-2, 6, 11-13, 17-19, 32, 34-35, and 52.

75.     By reason of some or all of the foregoing, Defendant Hitachi has infringed at least Claim 1 of the '581 Patent.  Defendant Hitachi's infringement has been willful since at least the date of the filing of the original Complaint instituting this action..

76.     SDS has suffered damages as the direct and proximate result of Defendant Hitachi's infringement of the '581 Patent.

## Count Nine
### Infortrend's Infringement of the '291 Patent

77.     SDS incorporates by reference as if fully set forth herein the averments contained within Paragraphs 1-2, 7, 11-16, 36-37, 39, and 52.

78.     By reason of some or all of the foregoing, Defendant Infortrend has infringed at least Claim 1 of the '291 Patent.  Defendant Infortrend's infringement has been willful since at least the date of the filing of the original Complaint instituting this action..

79.     SDS has suffered damages as the direct and proximate result of Defendant Infortrend's infringement of the '291 Patent.  Defendant Infortrend's infringement has been willful since at least the date of the filing of the original Complaint instituting this action.

**Count Ten**
**Infortrend's Infringement of the '581 Patent**

80.     SDS incorporates by reference as if fully set forth herein the averments contained within Paragraphs 1-2, 7, 11-13, 17-19, 36, 38-39, and 52.

81.     By reason of some or all of the foregoing, Defendant Infortrend has infringed at least Claim 1 of the '581 Patent.  Defendant Infortrend's infringement has been willful since at least the date of the filing of the original Complaint instituting this action.

82.     SDS has suffered damages as the direct and proximate result of Defendant Infortrend's infringement of the '581 Patent.

**Count Eleven**
**Netapp's Infringement of the '291 Patent**

83.     SDS incorporates by reference as if fully set forth herein the averments contained within Paragraphs 1-2, 8, 11-16, 40-41, 43, and 52.

84.     By reason of some or all of the foregoing, Defendant Netapp has infringed at least Claim 1 of the '291 Patent.  Defendant Netapp's infringement has been willful since at least the date of the filing of the original Complaint instituting this action.

85.     SDS has suffered damages as the direct and proximate result of Defendant Netapp's infringement of the '291 Patent.

**Count Twelve**
**Netapp's Infringement of the '581 Patent**

86.     SDS incorporates by reference as if fully set forth herein the averments contained within Paragraphs 1-2, 8, 11-13, 17-19, 40, 42-43, and 52.

87.     By reason of some or all of the foregoing, Defendant Netapp has infringed at least Claim 1 of the '581 Patent.  Defendant Netapp's infringement has been willful since at least the date of the filing of the original Complaint instituting this action.

88.     SDS has suffered damages as the direct and proximate result of Defendant Netapp's infringement of the '581 Patent.

**Count Thirteen**
**Netgear's Infringement of the '291 Patent**

89.     SDS incorporates by reference as if fully set forth herein the averments contained within Paragraphs 1-2, 9, 11-16, 44-45, 47, and 52.

90.     By reason of some or all of the foregoing, Defendant Netgear has infringed at least Claim 1 of the '291 Patent.  Defendant Netgear's infringement has been willful since at least the date of the filing of the original Complaint instituting this action.

91.     SDS has suffered damages as the direct and proximate result of Defendant Netgear's infringement of the '291 Patent.

**Count Fourteen**
**Netgear's Infringement of the '581 Patent**

92.     SDS incorporates by reference as if fully set forth herein the averments contained within Paragraphs 1-2, 9, 11-13, 17-19, 44, 46-47, and 52.

93.     By reason of some or all of the foregoing, Defendant Netgear has infringed at least Claim 1 of the '581 Patent.  Defendant Netgear's infringement has been willful since at least the date of the filing of the original Complaint instituting this action.

94.     SDS has suffered damages as the direct and proximate result of Defendant Netgear's infringement of the '581 Patent.

## Count Fifteen
## Qnap's Infringement of the '291 Patent

95.     SDS incorporates by reference as if fully set forth herein the averments contained within Paragraphs 1-2, 10-16, 48-49, 51-52.

96.     By reason of some or all of the foregoing, Defendant Qnap has infringed at least Claim 1 of the '291 Patent.  Defendant Qnap's infringement has been willful since at least the date of the filing of the original Complaint instituting this action.

97.     SDS has suffered damages as the direct and proximate result of Defendant Qnap's infringement of the '291 Patent.

## Count Sixteen
## Qnap's Infringement of the '581 Patent

98.     SDS incorporates by reference as if fully set forth herein the averments contained within Paragraphs 1-2, 10-13, 17-19, 48, 50-52.

99.     By reason of some or all of the foregoing, Defendant Qnap has infringed at least Claim 1 of the '581 Patent.  Defendant Qnap's infringement has been willful since at least the date of the filing of the original Complaint instituting this action.

100.     SDS has suffered damages as the direct and proximate result of Defendant Qnap's infringement of the '581 Patent.

WHEREFORE, SDS prays that this Court:

(1)     Enter judgment in favor of SDS and against Defendants for infringement, including willful infringement as appropriate, of the '291 Patent, as set forth above;

(2)     Enter judgment in favor of SDS and against Defendants for infringement,
including willful infringement as appropriate, of the '581 Patent, as set forth
above;

(3)     Award damages to SDS in an amount to be proven at trial for Defendants'
infringement, pursuant to 35 U.S.C. § 284;

(4)     Declare this to be an exceptional case pursuant to 35 U.S.C. § 285 and award SDS
its attorney's fees in this action.

(5)     Award the costs of this action to SDS.

(6)     Try this case before a jury; and

(7)     Allow SDS to have such other and further relief as the Court deems just and
proper, premises considered.

**PROCTOR HEYMAN, LLP**

*/s/ Neal C. Belgam*
Neal C. Belgam (No. 2721)
nbelgam@proctorheyman.com
Melissa N. Donimirski (# 4701)
mdonimirski@proctorheyman.com
1116 N. West Street
Wilmington, DE 19801
(302) 472-7300

Attorneys for Plaintiff Summit Data
Systems, LLC

OF COUNSEL:

**MORRIS, MANNING & MARTIN, LLP**

Bryan G. Harrison (#331750)
bgh@mmmlaw.com
John P. Fry (#278705)
jfry@mmmlaw.com
W. Andrew McNeil
wmcneil@mmmlaw.com (#49836)
1600 Atlanta Financial Center
3343 Peachtree Road, NE
Atlanta, Georgia 30326-1044
Telephone:  (404) 233-7000
Fax:  (404) 365-9532

Dated:  March 3, 2011